UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

RONALD HURST,

          Petitioner,

v.

ROSANNE CAMPBELL,

          Respondent.

Case No.  2:06-CV-0858 RSL

REPORT AND RECOMMENDATION

Noted for March 27, 2009

This case has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR 3, and MJR 4.  Petitioner is seeking federal habeas relief, pursuant to 28 U.S.C. § 2254, from a state jury conviction arising out of California State Superior Court.  He is currently detained at the Mule Creek State Prison in Ione, California.

Petitioner raises the following grounds for habeas relief:

A.     Ineffective assistance of counsel due to counsel's failure to recognize and object to introduction of co-defendant's post-arrest statements at trial;

B.     Petitioner was improperly sentenced to serve consecutive eight-year terms of imprisonment on counts 3 and 4, because those offenses do not qualify for such treatment under Cal. Pen. Code section 667.6 (c) or (d);

C.     Petitioner was unconstitutionally sentenced to an aggravated and consecutive terms in violation of his Fifth, Sixth, and Fourteenth Amendment protections;

D.     Petitioner was sentenced unconstitutionally to two full, separate and consecutive terms as to counts 3 and 4 in violation of *Blakely* and *Apprendi*;

  E.  Petitioner was unconstitutionally sentenced to consecutive terms of imprisonment as to counts 4 and 5.

After reviewing the Petition and balance of the record, this report is submitted to the Honorable Robert S. Lasnik, Chief United States District Judge, pursuant to the provisions of 28 U.S.C. § 636.

## FACTUAL BACKGROUND

On , April 18, 2002, Petitioner, Ronald Hurst, was arrested and subsequently charged in the state's original information, with the following crimes:

  Forcible Rape (Cal. Pen. Code §261(a)(2); Count 1);

  Forcible Rape While Acting in Concert (§264.1; Count 2);

  Anal and Genital Penetration By a Foreign Object (§289(a)(1); Count 3);

  Rape by use of drugs (§ 261(a)(3); Count 4);

  Kidnaping (§ 207(a); Count 5);

  Anal and Genital Penetration By a Foreign Object (§289(e); Count 6); and

  Resisting or Obstructing a Peace Officer (§ 148(a)(1)); Count 8).

CR 83-86, (referencing the Court Record or trial transcript, which was submitted with Respondent's Answer).

In the early morning hours on April 18, 2002, a 911 phone call was made reporting a disturbance at an apartment complex. When police officers arrived at the scene they knocked on the door of the identified residence. The knocking did not produce a response, but they could hear movement and noises from within the apartment. The officers kicked the door open, which was found to be held closed with a chair wedged under the doorknob, and entered the apartment with guns drawn. In one of the bedrooms, officers found Petitioner sitting in a chair and the victim laying on the bottom mattress of a bunk bed. The victim was partially clothed, unsteady on her feet and appeared to be intoxicated and under the influence of a stimulant. In another bedroom officers found two other individuals: Katherine Markes, the apartment's legal tenant, and Shane Beaudoin. The victim was taken outside the apartment, where she stated something was put in her drink and that Petitioner and Shane Beaudoin "had started in on her sexually." CR 164. Petitioner and Mr. Beaudoin were both arrested on April 18, 2002.

Petitioner and Mr. Beaudoin were charged by information, and their joint trial commenced on

April 30, 2003. At the trial jurors heard testimony from several witnessess, including police officers, a forensic nurse, the victim, the victim's family, other residents of the apartment complex, a toxicologist, criminalists, counselor, and a forensic serologist. Petitioner and Mr. Beaudoin testified at the trial in their own defense. The testimony reflected significantly different stories about the events that took place in the early morning of April 18, 2002. Closing argument took place on June 3, 2003. Two days later the jury returned its verdict, finding Petitioner and Mr. Beaudoin not guilty of forcible rape (count 1), not guilty of forcible rape while acting in concert (count 2), guilty of rape (count 3), guilty of Rape by Use of Drugs (count 4), guilty of kidnapping (count 5). Petitioner was also found guilty of resisting, obstructing, and delay of a peace officer (count 7 of the original information). CR 1926-1929. (The undersigned notes that sometime during the trial an amended information was filed, dropping the charge of anal and genital penetration by a foreign object as charged in count six of the original information.)

Sentencing of both Petitioner and Mr. Beaudoin took place on July 11, 2003. After considering the record, but before hearing argument from any party, the judge stated, "I am in agreement with following the recommendations of the probation department as to both Mr. Beaudoin and Mr. Hurst in regard to the intended sentence for the reasons stated by probation in their reports." CR 1935. Because the Petition raises questions focused on the legality of his sentence, the state judge's remarks after hearing argument and victims statement are quoted at length, as follows:

> We'll take Mr. Beaudoin's case first.
> Mr. Beaudoin, you're not eligible for probation, so that's out of the question.
> You have a prior strike conviction for first degree residential burglary, and that disqualifies you from being considered for probation under Penal Code Section 667 (b)(2).
> But even if you were considered eligible for probation under any theory or law, I wouldn't, under any circumstances, grant you probation in light of the facts of this case, your criminal history, et cetera.
> I've considered all those factors in Rule 4.414 and others that you're maybe wanting to be placed on probation and having adverse an affect on you; all the other factors listed in that section would mitigate against a grant of probation.
> So the real questions come down to the selection of the appropriate term for each offense, and I find under Rule 4.423 that there are no circumstances in mitigation in this case.
> There are several factors in aggravation under 4.421. I find the following factors in aggravation, (a)(1), (a)(3), (a)(4), (a)(8), (b)(1), (b)(2), (b)(3), (b)(4), and (b)(5).
> And what those break down to is that I find that there were, on your part, great – that this case did involve rape, great threats of bodily harm, that these acts imposed a high degree of cruelty, viciousness and callousness.
> Both you and Mr. Hurst did not treat Debra Gaut as a person. You treated her as an object to be utilized in your own sexual gratifications.
> I find that she was particularly vulnerable. She was a minor. She was sat upon by you two men, who are much bigger, stronger, in a position where you had her under your

REPORT AND RECOMMENDATION
Page - 3

complete, complete control and domination.

Even though there were other persons present in that apartment where the rapes occurred, the utilization of drugs and alcohol prevented her, I believe, from calling out to them. She was intoxicated and that's above and beyond that, and the fact that the use of drugs being an element of the offense here.

So I find she was particularly vulnerable.

You induce a minor to participate in this crime with you. You were the person who provided the drug Ecstacy in this case, Mr. Beaudoin. It may not even have happened but for you being the source of that drug and utilizing it on her and as well as yourselves. So I think that does indicate some planning, sophistication, and professionalism on your part.

These crimes, as well as your prior record, I think, indicate you are a person who is a danger to society.

You have numerous prior convictions as an adult dating from, let's see, 1994 possession of a knife on school grounds; obstructing a peace officer; carrying a concealed weapon in a vehicle, a violation of probation based upon that event; a prior theft; petty theft conviction; a prior battery conviction; a felony residential burglary; a felony level infliction of injury to a spouse or cohabitant; a violation of parole; being under of [sic] influence.

So you have an extensive prior criminal history.

You served a prior prison term that didn't shape you up. You failed on both probation and parole.

So for all those reasons it's clear that an aggravated sentence is appropriate in this case as to Count III.

So for Count III, the Penal Code Section 261(a)(3) offense, I will select the aggravated term of eight years.

To that end as to Count IV, although I could select aggravated term for that offense to make this offense proportionate to a relative involvement of both of you gentlemen in this offense, I will select the mid term as recommended by probation. That's a six-year term. That would be directed to run consecutive to the charge in Count III.

Count V I will select -- by operation of law it's the midterm of five years. One third of that is one year, eight months.

And the reason why I'm selecting consecutive offenses in this case is I think actually you could be sentenced under both 67.6(d) and 667.6(c) if I – and under 667.6(d) consecutive sentences would be mandatory.

I do find that both Counts III and IV were violent sex crimes and they occurred on separate occasions.

You, between the commission of Mr. Hurst, the sexual intercourse with the victim, did have a reasonable opportunity to reflect on your actions and nonetheless then resumed your own personal sexually assaultive behavior switching sides between you and Mr. Hurst being the one holding her down while the other sexually assaulted her and then switching positions and then the other sexual assault offense occurred.

So I think a consecutive, full separate, consecutive sentence could be imposed and would be authorized under 667.6(d). I think it's also authorized under Penal Code Section 667.6(c).

And then in making that determination I have to apply the factors in Rule 4.425(a)(1). I believe the crimes and their objectives were independent of each other.

You have both sexually assaulted her, switched sides, changed the roles of each of you, held her down forcibly while the other sexually assaulted her.

Under Rule 4.425(a)(2) the crimes involve separate acts of violence or threats as to both of you in the commission of those offenses.

And under Rule 4.425(a)(3) the crimes were committed at different times and did not indicate they may have been part of your overall scheme to sexually assault this young woman, but they were separate as to your own personal involvement and the role that you played in those offenses.

So for those reasons under 4.425 I believe a full separate consecutive sentence is warranted for Counts III and IV.

REPORT AND RECOMMENDATION
Page - 4

  So I will select the total term on Count III as eight years.

  The term on Count IV is six years.

  The term on Count V is the mid term one year, eight months. But because you admitted that you suffered a prior strike conviction under Penal Code Section 667(b) through (i), the residential burglary, those terms are doubled.

  So your total term of commitment for these offenses is 32 years four months.

  For your admission to Penal Code Section 148(a), resisting arrest offense, that will be one year in the county jail concurrent to the sentence previously imposed.

  And because you admitted a prior prison term – I should have mentioned this. The total term of three years, four months reflects the fact that you're also subject to a one-year enhancement for your prior prison term for the spousal – felony spousal abuse conviction.

  So your total term is 32 years, four months in state prison, and this is warranted because you have a prior strike conviction and your criminal history, I think, is more serious than that of Mr. Hurst.

[Omitted].

  Now, Mr. Hurst, you are eligible for probation if I find this to be an unusual case, because you don't have the prior strike conviction.

  I've considered the factors under Rule 4.413, and I don't find that any of those applied that would warrant a finding of an unusual case in this matter.

  Also applying factors in 4.414 other than factors in your favor that indicate that you're willing to comply with probation and a sentence to state prison will have an adverse effect on your life, other factors indicate under that section that you are not a good candidate for probation.

  I think that the [sic] under the circumstances I will find the following factors apply: 4.414(a)(1), (a) (3), (a)(4), (a)(6), (b)(1), (b)(2), (b)(4), (b)(7), and (b)(8).

  The circumstances of those crimes are more serious as compared to other circumstances of similar crimes in that you were both involved in a consistent action here to sexually assault this young lady.

  You utilized drugs to resist her – weaken her resistance and to make her more vulnerable to your predatory behavior. She was vulnerable for the reasons I've expressed in regard to Mr. Beaudoin's case.

  You have obviously inflicted physical and emotional injury on her as detailed by her mother's and her own letters to the Court.

  You were obviously an active participant in this crime.

  You also have a prior history of criminal conduct of a battery, driving under the influence, possession of drug paraphernalia, all misdemeanors, and one felony drug conviction.

  Let's see. You have a long-standing history of drug abuse.

  Your prior performance on probation has been unsatisfactory, and your history of alcohol and substance abuse would indicate you're at great risk to reoffend.

  You have no remorse, and you are a danger to our society.

  So for all those reasons probation would be denied.

  And in determining the appropriate term for you under the range of possible sentences there are no mitigating factors under Rule 4.423.

  There are several aggravating factors they are 4.421(a)(1), (a)(3), (b)(1), (b)(2), (b)(4), (b)(5), among others.

  As I've indicated as to Mr. Beaudoin, these crimes did involve a threat of bodily harm to the victim; disclosed a high degree of cruelty, viciousness, and callousness to the victim.

  She was vulnerable for the reasons I've previously expressed.

  You have engaged in violent conduct that would indicate you're a serious danger to society.

  Your prior convictions are serious and numerous.

  You were on probation when you committed this offense. Your prior performance

on probation was unsatisfactory, and you have no remorse and continue to lie about your own involvement in this case as your testimony demonstrated amply during this trial.

So for all those reasons I will select the aggravated terms on Counts III and IV, and I've considered the factors as I must to determine whether your sentences should be consecutive under Penal Code Section 667.6(c) and (d). For the reasons I've previously expressed as to Mr. Beaudoin those same factors apply to you.

Your consecutive conditions, full, separate, and consecutive could be justified under either code section and under Rule with 4.425(a)(1).

So I make those same findings that I did as to Mr. Beaudoin.

So for Count III your sentence will be the aggravated term of eight years.

For Count IV your sentence will be the aggravated term, and that will be directed to be a full, separate, and consecutive sentence to that imposed in Count III.

For Count V I will select the mid term of five years. One third the mid term by operation of law is one year, eight months.

For Count VI, the resisting arrest charge, that will be one year in county jail concurrent to the sentences previously imposed.

Counts III, IV, and V consecutive to each other.

The total term of commitment to the state Department of Corrections will be 17 years, eight months.

CR 1951-1960.

## **EVIDENTIARY HEARING NOT REQUIRED**

The function of an evidentiary hearing is to try issues of fact; such a hearing is unnecessary when only issues of law are raised. See, e.g., Yeaman v. United States, 326 F.2d 293 (9th Cir. 1963). The undersigned judge concludes that there are no relevant factual disputes to resolve in order for the Court to render its decision in this case. Accordingly, an evidentiary hearing was not conducted.

## **DISCUSSION**

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 was enacted. The Act revised habeas law, such that Section 2254(d) reads:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d); Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996). Section 2254(e) states:

In a proceeding instituted by an application for a writ of habeas corpus by person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of

REPORT AND RECOMMENDATION
Page - 6

rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

The Ninth Circuit, sitting *en banc*, commented on the effect of the revisions:

> The [Antiterrorism] Act limits the ability of federal courts to reexamine questions of law and mixed questions of law and fact. Historically, federal habeas courts have reviewed all questions of law and mixed questions of law and fact de novo. *Wright v. West*, 505 U.S. 277, 299-304, 112 S.Ct. 2482, 2494-97, 120 L.Ed.2d 225 (1992) (O'Connor, J., concurring). Under the amendments to Chapter 153, federal courts must restrict their legal analysis to whether the state decision was contrary to or an unreasonable application of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. S 2254(d)(1). The Act further restricts the scope of federal review of mixed questions of fact and law. 28 U.S.C. S 2254(e). De novo review is no longer appropriate; deference to the state court factual findings is.

Jeffries v. Wood, 114 F.3d 1484, 1498 (9th Cir. 1997), *cert. denied*, 118 S.Ct. 586 ( Dec 01, 1997) (NO. 97-289).

Before granting relief, the district court must first determine whether the state court decision was erroneous. Van Tran v. Lindsey, 212 F.3d 1143, 1155 (9th Cir. 2000), *cert. denied*, 121 5. Ct. 340 (2000). The district court must then determine whether the state court decision involved an unreasonable application of clearly established federal law. Id. The district court may grant habeas relief only if it finds the state court decision was unreasonable. Van Tran, 212 F.3d at 1153; Weighall v. Middle, 215 F.3d 1058, 1063 (9th Cir. 2000).

*A. Petitioner Was Not Denied Right To Constitutionally Adequate Representation*

The Sixth Amendment to the United States Constitution provides that a criminal defendant "shall enjoy the right to have the assistance of counsel for his defense." U.S. Const. amend. VI. Ineffective assistance of counsel claims require a showing that (1) counsel's performance was constitutionally deficient, and (2) but for this deficiency, there is a reasonable probability that the outcome would have been different. Strickland v. Washington, 466 U.S. 668, 687 (1984). Considering the first prong, petitioner must rebut "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and that counsel's performance was "sound trial strategy." Id. at 689. The Court must attempt to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. To meet the second Strickland requirement of prejudice, "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Petitioner argues that his state trial counsel rendered ineffective assistance as a result of his (counsel's) failure to object to–and/or move to redact–evidence of Mr. Beaudoin's comment to Detective Lensing that Petitioner "had the hots" for the victim. The trial court record reflects that, after Petitioner and Mr. Beaudoin testified, the prosecutor on rebuttal presented evidence of statements they had made in post-arrest interviews with Detective Lensing. (CR 1723-1724, 1727- 1731, 1733.) Detective Lensing testified Beaudoin had said, among other things, he had helped Petitioner carry the victim three times. (CR 1727.) During cross-examination of Detective Lensing on rebuttal, Mr. Beaudoin's counsel asked the detective if he recalled the following colloquy between Lensing and Beaudoin the early morning of April 18, 2002:

> [Lensing]: Nothing happened?
> [Beaudoin]: I helped him with fuckin' three carries, dude.
> [Lensing]: You what?
> [Beaudoin]: Three carries.
> [Lensing]: What do you mean?
> [Beaudoin]: Well, he wanted to take her, fuckin' dude. You call my girl, dude, Teal LeBaron. Ron's had the hots for the bitch from day one, right?

CR 1742-1743.

Petitioner argues co-defendant's remark that Petitioner "had the hots" for the victim was inculpatory as to Petitioner and because of this, it implicates his Sixth Amendment right to confront and cross-examine witnesses against him. Specifically, Petitioner argues the comment implicated his rights as explicated by the *Aranda* and *Bruton* decisions.[1] Petitioner contends the statement was prejudicial in that it "suggest[ed] . . . Petitioner planned to kidnap the victim for the purpose of having sex with her." Petition at 5A. Petitioner claims his trial counsel's failure to object to this testimony violated his right to adequate representation.

In rejecting Petitioner's claim of ineffective assistance on direct appeal, the state appellate

---

[1] *In People v. Aranda*, 63 Cal.2d 518, 530 (1965), the California Supreme Court held that any part of one codefendant's extrajudicial statement that implicates another codefendant must be excised before the extrajudicial statement may be introduced at a joint trial of the codefendants. "In [*Bruton v. United States*, 391 U.S. 123 (1968)] the Supreme Court held that the introduction of a nontestifying codefendant's confession violates a defendant''s Sixth Amendment right of confrontation, even if the judge instructs the jury that the confession is admissible only against the nontestifying codefendant." *United States v. Hoac*, 990 F.2d 1099, 1105 (9th Cir. 1993).

REPORT AND RECOMMENDATION
Page - 8

court wrote:

> To prevail on this argument, Hurst must show his attorney's performance was constitutionally deficient, and the deficient performance prejudiced his defense, i.e., but for the error, there was a reasonable probability the result would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 690, 694 [80 L. Ed. 2d 674, 695, 698]).
> The *Aranda-Bruton* rule prohibits the admission of a defendant's out-of-court statement that incriminates a codefendant who did not have the opportunity to crossexamine the declaring defendant. (*People v. Aranda*, supra, 63 Cal.2d 518; *Bruton v. United States*, supra, 391 U.S. 123.) Beaudoin's statement he helped [Petitioner] carry the drugged victim three times because Hurst "wanted to take her," a young woman for whom he had "had the hots . . . from day one," implicates [Petitioner] in criminal conduct. It implies Hurst directed Beaudoin to help kidnap Debra.
> Hurst next argues, without citation to authority, he did not have an opportunity to cross-examine Beaudoin about the alleged statement. He claims he could not compel Beaudoin to take the stand again after Beaudoin had finished testifying. We are not convinced.
> When a defendant takes the stand, he waives his privilege against self-incrimination, and may be cross-examined on any matter to which he expressly or impliedly testified on direct examination or that is relevant to impeaching his credibility as a witness. (*People v. Ing* (1967) 65 Cal.2d 603, 610, 55 Cal. Rptr. 902.) His waiver extends for the proceeding in which he testified. (*People v. Lopez* (1980) 110 Cal.App.3d 1010, 1020, 168 Cal. Rptr. 378.) The trial court thus has discretion to permit his recall for further cross-examination even though he has already rested his case. (*People v. Rosoto* (1962) 58 Cal.2d 304, 352, 23 Cal.Rptr. 779, disapproved on another ground in *People v. Haston* (1968) 69 Cal.2d 233, 250, fn. 22, 70 Cal. Rptr. 419.) Hurst has not shown he was denied this opportunity to cross-examine Beaudoin and, thus, has not shown counsel's failure to object to the statement violated constitutional standards of performance.
> Even were we to conclude counsel erred by not recalling Beaudoin to the stand, counsel's actions did not result in prejudice. To establish ineffectiveness of counsel, it must be shown, inter alia, that "it is reasonably probable that a more favorable determination would have resulted in the absence of counsel's failings. [Citations.]" (*People v. Lewis* (1990) 50 Cal.3d 262, 288, 266 Cal.Rptr. 834). Even if the statement had not been admitted, there is no probability the result would have been different. The jury rejected evidence suggesting the defendants forcibly raped Debra and raped her in concert. Instead, it determined defendants each engaged in an act of sexual intercourse where the victim was prevented from resisting by an intoxicating or controlled substance, and the defendants knew or should have known of this condition. (Pen. Code, § 261(a)(3).)
> Defendants admitted they knew Debra was under the influence of Ecstasy. The medical and DNA evidence strongly supported Debra's testimony that defendants had sexual intercourse with her. Moreover, Mindi Jones testified she saw [Petitioner] carrying Debra over his shoulders, saw Beaudoin carry Debra upstairs into the apartment, then heard a woman scream, "Stop, leave me alone."
> Seen from the light of this evidence, Beaudoin's statement that he carried Debra three times because Hurst wanted to take her and had the "hots" for her duplicated the evidence already in the record. Hurst himself had been seen carrying Debra. Had Beaudoin's statement not been read before the jury, there is no likelihood the jury would have reached a different conclusion.

Exhibit 1 at 12-16 (unpublished California State Court of Appeals Decision, *People v. Beaudoin, et al*, dated January 5, 2005), attached to Respondent's Answer.

After reviewing the matter the undersigned finds the state appellate court properly rejected Petitioner's claim of ineffective assistance of counsel. The decision is neither contrary to nor an

REPORT AND RECOMMENDATION
Page - 9

1  unreasonable application of controlling federal law.  Petitioner is not entitled to relief on the basis of
2  ineffective assistance of counsel pursuant to 28 U.S.C. § 2254(d)(1).

3  ***B. Petitioner's Sentence Does Not Violate U.S. Constitutional Standards***

4  Each of Petitioner's remaining four claims for habeas relief focus on the legality of the 212 month
5  sentence he received on counts III, IV, and V.  Petitioner specifically alleges that he is entitled to federal
6  habeas relief because (1) the state trial court improperly sentenced Petitioner to full, separate and
7  consecutive terms of imprisonment on Counts III and IV, (2) Petitioner was unconstitutionally sentenced
8  to consecutive, aggravated terms of imprisonment on Counts III and IV, (3) the state trial court's
9  imposition of upper base term sentences on Counts III and IV violated Petitioner's federal constitutional
10 right to a trial by jury in violation of the U.S. Supreme Court's decisions in *Blakely v. Washington* and
11 *Apprendi v. New Jersey* , and (4) Petitioner was unconstitutionally sentenced to a consecutive term of
12 imprisonment on Count V.  After reviewing the issues, the undersigned finds no merit in Petitioner's
13 remaining claims challenging the legality of his sentence.

14 First, the issue of whether or not Petitioner should have received consecutive, rather than
15 concurrent sentences, does not raise a cognizable habeas claim.   Habeas claims of sentencing error are
16 not cognizable in a federal habeas petition. Generally, "federal habeas corpus relief does not lie for errors
17 of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991) (*quoting* Lewis v. Jeffers, 497 U.S. 764, 780
18 (1990)). Moreover, "it is not the province of a federal habeas court to reexamine state-court
19 determinations on state-law questions."  Estelle v. McGuire, 502 U.S. at 68.

20 Petitioner argues the Supreme Court's decisions in *Apprendi* and *Blakely*, in addition to California
21 state law requires the imposition of concurrent sentences in this matter.  The undersigned finds no merit in
22 Petitioner's claims.

23 The State of California has made several adjustments or refinements to its criminal proceedings
24 following the Court's decisions in *Blakely*, and *Apprendi*.  Most notably is the California State Supreme
25 Court's decision in People v. Black, 161 P.3d 1130, (July 19, 2007), and the previous decision in that
26 matter.

27 In *Black*, as in the case at bar, defendant argued that imposition of consecutive terms of
28 imprisonment under state law based upon facts not found by a jury violated his Sixth Amendment rights.

REPORT AND RECOMMENDATION
Page - 10

The California high court explained that unlike some states which created a sentencing scheme with a presumption in favor of concurrent sentences that may be overcome only by factual findings made by a jury (noting Ohio, Washington), California's statute does not establish a presumption in favor of concurrent sentences; its requirement that concurrent sentences be imposed if the court does not specify how the terms must run merely provides for a default in the event the court fails to exercise its discretion. People v. Black, 161 P.3d at 1145, *citing* People v. Reeder (1984) 152 Cal.App.3d 900, 923, 200 Cal.Rptr. 479.  The California Court concluded:

> In deciding whether to impose consecutive terms, the trial court may consider aggravating and mitigating factors, but there is no requirement that, in order to justify the imposition of consecutive terms, the court find that an aggravating circumstance exists. (See § 669; Cal. Rules of Court rule 4.425(a), (b).) Factual findings are not required. In imposing an upper term, the court must set forth on the record ''facts and reasons'' (§ 1170, subd. (b)), including the ''ultimate facts that the court deemed to be circumstances in aggravation'' (Cal. Rules of Court, rule 4.420(e).) But it need only cite ''reasons'' for other sentencing choices (§ 1170, subd. (c)), and the reasons given for imposing a consecutive sentence need only refer to the ''primary factor or factors'' that support the decision to impose such a sentence. (Cal. Rules of Court, rule 4.406(a), (b); § 1170, subd. (c); see *People v. Tran* (1996) 47 Cal.App.4th 759, 774, 54 Cal. Rptr.2d 905.)
>
> The high court's decision in *Cunningham* does not call into question the conclusion we previously reached regarding consecutive sentences. The determination whether two or more sentences should be served in this manner is a ''sentencing decision[ ] made by the judge after the jury has made the factual findings necessary to subject the defendant to the statutory maximum sentence on each offense'' and does not ''implicate[ ] the defendant's right to a jury trial on facts that are the functional equivalent of elements of an offense.'' (*Black I, supra*, 35 Cal.4th at p. 1264, 29 Cal.Rptr.3d 740, 113 P.3d 534.) Accordingly, we again conclude that defendant's constitutional right to jury trial was not violated by the trial court's imposition of consecutive sentences on all three counts.

Id.

Similarly, Petitioner's claim that his consecutive sentence violates federal standards must fail. The issue of whether or not the Sixth Amendment prohibits judges, rather than juries, finding facts necessary to impose consecutive, rather than concurrent, sentences for multiple offenses was recently decided in Oregon v. Ice, 129 S.Ct. 711, (January 14, 2009).  Oregon, like some other states reacted to the Supreme Court's decisions in *Apprendi* and *Blakely*, and developed laws that required judges to make certain predicate fact findings before a consecutive sentence could be imposed. Like the matter at hand, defendant in the Oregon matter received consecutive sentences for multiple sexual crimes.  Ice argued that he had a Sixth Amendment right to have the jury, not the sentencing judge, find the facts that permitted the imposition of consecutive sentences. The Court disagreed and wrote:

> States' interest in the development of their penal systems, and their historic

REPORT AND RECOMMENDATION
Page - 11

dominion in this area, also counsel against the extension of *Apprendi* that Ice requests. Beyond question, the authority of States over the administration of their criminal justice systems lies at the core of their sovereign status. *See, e.g., Patterson*, 432 U.S., at 201, 97 S.Ct. 2319 ("It goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government."). We have long recognized the role of the States as laboratories for devising solutions to difficult legal problems. *See New State Ice Co. v. Liebmann*, 285 U.S. 262, 311, 52 S.Ct. 371, 76 L.Ed. 747 (1932) (Brandeis, J., dissenting). This Court should not diminish that role absent impelling reason to do so.

It bears emphasis that state legislative innovations like Oregon's seek to rein in the discretion judges possessed at common law to impose consecutive sentences at will. Limiting judicial discretion to impose consecutive sentences serves the "salutary objectives" of promoting sentences proportionate to "the gravity of the offense," *Blakely*, 542 U.S., at 308, 124 S.Ct. 2531, and of reducing disparities in sentence length, see 6 W. LaFave, J. Israel, N. King, & O. Kerr, Criminal Procedure § 26.3(f) (3d ed.2007). All agree that a scheme making consecutive sentences the rule, and concurrent sentences the exception, encounters no Sixth Amendment shoal. To hem in States by holding that they may not equally choose to make concurrent sentences the rule, and consecutive sentences the exception, would make scant sense. Neither *Apprendi* nor our Sixth Amendment traditions compel straitjacketing the States in that manner.

Oregon v. Ice, 129 S.Ct. 711, 718-719 (2009).

Here, the State of California clearly has given discretion to the sentencing judge to impose consecutive, rather than concurrent sentences.  There is no presumption of a concurrent sentence, and the sentencing judge in this matter gave several reasons, noted above, to properly support the imposition of consecutive sentences.  Moreover, the Supreme Court's recent decision in *Oregon v. Ice, supra,* fully supports the judge's decision to impose consecutive sentences upon Petitioner.

## **CONCLUSION**

Based on the foregoing, the Court should DENY the habeas corpus petition.  Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **March 27, 2009**, as noted in the caption.

DATED this 23th day of February, 2009.

                      */s/ J. Kelley Arnold*
                      J. Kelley Arnold
                      U.S. Magistrate Judge